Scott A. Ewing
Law Office of Scott A. Ewing, PLC
5215 N Sabino Canyon Rd
Tucson, AZ 85750
State Bar No. 030375
(520) 777-3398
scott@azcivilrightsattorney.com

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Carlos Castro, | ) |
| Plaintiff, | ) No. 2:18-cv-00753-SRB-ESW |
| vs. | ) **FIRST AMENDED COMPLAINT** |
| The State of Arizona; the City of Glendale, a political subdivision of the State of Arizona; the City of Peoria, a political subdivision of the State of Arizona; and Brad Martin, in his individual capacity and as an employee of the Arizona Department of Public Safety, | ) JURY TRIAL DEMANDED |
| Defendants. | ) |

Plaintiff Carlos Castro alleges as follows:

### PARTIES, JURISDICTION, VENUE

1. Plaintiff Carlos Castro is a resident of Maricopa County in the State of Arizona.

2. The State of Arizona is the jural entity that is vicariously liable for the actions of its employees, including employees of the Arizona Department of Public Safety, and

immunity was waived by the Arizona Attorney General in an email dated April 2, 2018, so that this matter can be directly filed in federal court.

3. The City of Glendale is a political subdivision of the State of Arizona. Its principal place of business is within Maricopa County in the State of Arizona.

4. The City of Peoria is a political subdivision of the State of Arizona. Its principal place of business is within Maricopa County in the State of Arizona.

5. Defendant Brad Martin is a resident of the State of Arizona and is, or was at the time of the incident, an employee of the Arizona Department of Public Safety.

6. The incident that gave rise to this litigation occurred in Maricopa County in the State of Arizona.

7. This Court has subject matter jurisdiction over the federal question claim pursuant to 28 U.S.C. § 1331.

8. This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

9. Based upon the foregoing allegations, jurisdiction and venue are proper.

## **FACTUAL ALLEGATIONS**

10. Plaintiff incorporates the foregoing allegations as if set forth in full here.

11. On March 10, 2017, the Arizona Department of Public Safety ("DPS"), received information that the Glendale Police Department was looking for Carlos Castro regarding an alleged robbery committed earlier in the day.

12. Since Mr. Castro was alleged to have been involved in a shooting on March 3, 2017, DPS requested and was granted an Exigent Circumstance Request to locate him by tracking the location of his cell phone.

13. Once an address was obtained, DPS SWAT ("SWAT") was notified to prepare and wait for confirmation that Mr. Castro was identified at the address.

14. Detectives from the Gang & Immigration Intelligence Enforcement Mission ("GIITEM"), managed and led by DPS, were sent to surveil the residence and confirm Mr. Castro was there.

15. Detective William Johnston (badge #8134) (also referred to as "Detective Johnson" in the police reports related to this incident) of the Glendale Police Department was also tasked with surveillance of the residence to confirm Mr. Castro was there.

16. Detective Johnston confirmed Mr. Castro was present at the address.

17. Detective Andrew Brandt (badge # 80173) requested a residential search warrant for the address, which was then issued by the Honorable Cindi Nannetti, Maricopa County Superior Court.

18. Due to the nature of the allegations against Mr. Castro, and his criminal history, SWAT was tasked with executing the residential search warrant.

19. Upon execution of the residential search warrant, SWAT advised that Mr. Castro had fled and was last seen running through neighboring backyards.

20. SWAT and GIITEM officers located Mr. Castro sitting on the roof of a residence a few houses from where the search warrant was executed.

21. When SWAT and GIITEM officers located Mr. Castro, he surrendered by stating "I'm done" while still on edge of the roof.

22. SWAT and GIITEM officers ordered Mr. Castro to get down.

23. Within a few seconds, and before Mr. Castro had enough time to comply, Detective William Johnston deployed his Taser.

24. Mr. Castro remained in place, repeated, "I'm done, I'm done," and held his hands up in a sign of surrender, while still crouched on the edge of the roof.

25. Detective William Johnston deployed his Taser a second time.

26. The second shot caused Mr. Castro to fall off the roof to the ground.

27. SWAT and GIITEM officers immediately surrounded Mr. Castro.

28. SWAT and GIITEM officers pinned Mr. Castro face-down to secure him in handcuffs.

29. Numerous backup officers stood by, as well as two K9 handlers with their dogs.

30. DPS K9 handler Kendall Hill (badge #4087) stood away at a safe distance from the group of officers who had surrounded Mr. Castro, with his police dog restrained.

31. SWAT K9 handler Brad Martin (badge #7094) approached Mr. Castro, where he was face down on the ground, with several officers on top of him.

32. While Mr. Castro was pinned to the ground, an unidentified law enforcement officer grabbed Mr. Castro's foot and held his leg so that SWAT K9 handler Brad Martin's police dog could bite Mr. Castro's leg.

33. Mr. Castro was unarmed, pinned to the ground, and no longer a threat when the police dog Storm, under Brad Martin's control, began biting Mr. Castro's leg.

34. The unidentified officer released Mr. Castro's foot after Storm had a grip on Mr. Castro's leg.

35. Mr. Castro repeatedly begged for the dog to be removed.

36. In the body cam footage of the incident, Mr. Castro can be heard yelling and screaming as the dog continues to maul his leg for at least 45 seconds.

37. After the dog began to bite his leg, officers can be heard saying "stop resisting."

4

38. Brad Martin allowed Storm to begin biting Mr. Castro after Mr. Castro had verbally surrendered, was tasered twice, had fallen off a roof, was pinned to the ground by multiple officers, and was no longer a threat or a flight risk.

39. Brad Martin allowed Storm to remain on the bite for an extended and unreasonable period of time causing extreme emotional and physical pain and suffering, and severe, permanently disfiguring injuries to Mr. Castro.

40. The case agent in the investigation of Mr. Castro, Detective Andrew Brandt, is an employee of the City of Peoria's Police Department and was working for, and under the direction of, the DPS GIITEM gang task force at the time of this incident.

41. When the dog began biting Mr. Castro's leg, Detective Brandt grabbed Mr. Castro's girlfriend Ashley Benton by the elbow, led her closer to where the dog was mauling Mr. Castro, and said, "make that bitch watch."

42. None of the police reports authored by any of the officers present at this incident named the dog handler who deployed his dog to bite Mr. Castro.

43. None of the police reports authored by any of the officers present at this incident indicate that an officer held out Mr. Castro's leg for the dog to bite, or identify the name and badge number of the officer, or the agency that employs him.

44. The police reports, including the case report authored by case agent, Detective Brandt, specifically name DPS Detective Kendall Hill and his K9 Alex as being present.

45. DPS Detective Hill stated in his own report that a different DPS SWAT K9 was deployed to bite Mr. Castro, but Detective Hill also did not provide that SWAT K9 handler's name or badge number in his police report.

46. The report authored by Sergeant Robert Bond (badge # 5866), who was Detective Brandt's DPS supervisor, mentions the officer who used a Taser by name (calling him Detective Johnson) but he refers only to the fact that "SWAT deployed a K9" and does not use the SWAT K9 handler's name in his report either.

47. The identity of the SWAT K9 handler whose dog bit Carlos had to be obtained through a public records request followed by several email messages to DPS employee Danita Amen (badge # 7348), explaining that there were *two* dog handlers on the scene, and that in Detective Brandt's case report, he included only the name of the K9 handler who had *not* deployed his dog.

48. Danita Amen finally provided the name of the dog handler whose dog bit Carlos in an email on January 12, 2018, stating "The SWAT K9 Handler is Brad Martin #7094, his K9 is Storm and the Greg Kocis #6091 is the sergeant."

49. An initial public records request that included a request for any video of the incident was made on August 24, 2017.

50. No video was voluntarily disclosed by DPS in response to the initial public records request, but Detective Ramos (badge # 80264) stated in his police report that he had been wearing a body worn camera, and so additional requests were made to obtain this specific item, including a formal request to DPS public records, on December 13, 2017.

51. After numerous phone calls and email messages, as well as the disclosure of the identity of the canine handler by Danita Amen on January 12, 2018, video footage from the body cam worn by Detective Ramos (badge # 80264) was disclosed by DPS in late January of 2018.

52. An edited version of the body cam video that did not include the portion showing the unidentified police officer holding Mr. Castro's foot so that the dog could bite his leg, was provided to Mr. Castro's defense attorney in the criminal case against him.

53. None of the agencies named in this complaint have accurately responded to public records requests, email messages, or phone calls, requesting the name, badge number, and agency of the officer who held Mr. Castro's leg, with the requested information.

54. All of the officers present were grossly negligent in their failure to intervene in a clearly unlawful application of force.

55. All of the officers present showed a wanton and reckless indifference to the rights of Mr. Castro when they either cooperated, or failed to stop, the serious bodily injuries and emotional pain and suffering being inflicted on Mr. Castro after he had already surrendered and was in the custody of the police.

56. Brad Martin and the unidentified officer who held Mr. Castro's leg knew that having the canine maul Mr. Castro's leg was likely to cause severe emotional distress.

57. Allowing his police dog to maul Mr. Castro's leg while the unidentified officer held it, after Mr. Castro had already been tasered twice, fallen off the roof, and had been taken into custody by the police, with numerous armed officers standing nearby, was extreme and outrageous conduct on the part of Brad Martin and the unidentified officer.

58. Brad Martin and the unidentified officer who held Mr. Castro's leg caused Mr. Castro to be touched in an offensive and/or harmful manner.

59. All of the officers present, and particularly any higher-ranking officers in a supervisory capacity, were negligent for failing to stop what was clearly an illegal act perpetrated by Brad Martin and the unidentified officer who held Mr. Castro's leg.

60. Mr. Castro suffered severe, permanently disfiguring injuries to his leg. He has undergone multiple surgeries and may have to undergo further surgeries, including skin grafts, to repair the injuries. He has undergone and will need to continue physical therapy. However, he has also been in the State's custody since the incident, and he has not had an opportunity to ascertain the full extent of his injuries, or the treatment that will be needed.

## **CLAIMS**

### **COUNT I: Negligence**

**(As to Defendants the State of Arizona, City of Glendale, and City of Peoria only.)**

61. Plaintiff incorporates the foregoing allegations as if set forth in full here.

62. William Johnston failed to act as a reasonably prudent officer would, when he used his Taser on a suspect in an elevated location, thereby causing him to fall to the ground from the edge of the roof.

63. Brad Martin failed to act as a reasonably prudent officer would when he allowed his canine to bite the suspect for an extended period of time after the suspect had already verbally surrendered, had been tasered twice, had fallen off the roof, and was in the custody and control of several officers with numerous other armed officers standing nearby.

64. The unidentified officer failed to act as a reasonably prudent officer would when he held Carlos Castro's foot so that Brad Martin's canine, Storm could bite Carlos'

leg while Carlos was in the custody and control of several other officers and had just been subjected to two Taser shots, which causes the body to convulse involuntarily.

65. The Arizona Department of Public Safety, the City of Glendale, and the City of Peoria all had law enforcement personnel present at the scene who did not intervene, to stop other officers from engaging in the obvious use of excessive force, as would a reasonably prudent officer.

66. None of the law enforcement personnel who were there in a supervisory capacity acted as a reasonably prudent supervisor would when they allowed their subordinates to use a police dog to inflict serious injuries on a suspect who was already under their control.

67. The negligence of the various law enforcement personnel present during this incident, some identified and some unidentified, through actions and/or omissions, was the actual and proximate cause of Carlos Castro's injuries.

68. Defendants the State of Arizona, City of Glendale, and City of Peoria are vicariously liable for the negligent acts of their employees.

**WHEREFORE, Plaintiff requests the Court enter judgement as follows:**

A. Awarding all reasonably foreseeable damages that were proximately caused by defendants' negligence.

B. Awarding costs and attorney's fees under any available statute.

C. Awarding such other and further relief as the Court may deem just and proper.

**COUNT II**

**Common Law Battery**

69. Plaintiff incorporates the foregoing allegations as if set forth in full here.

70. Brad Martin and the unidentified officer caused an offensive and harmful touching of Mr. Castro when the unidentified officer held Mr. Castro's leg and Brad Martin allowed his police dog to bite it.

71. The State of Arizona is vicariously liable for the conduct of its employees while they are acting in the course of their employment.

**WHEREFORE, Plaintiff requests the Court enter judgement as follows:**

A. Awarding compensatory damages.

B. Awarding costs and attorney's fees under any available statute.

C. Awarding such other and further relief as the Court may deem just and proper.

## COUNT III

## Intentional Infliction of Emotional Distress

### (As to the State of Arizona)

72. Plaintiff incorporates the foregoing allegations as if set forth in full here.

73. Brad Martin and the unidentified officer engaged in extreme and outrageous conduct when the unidentified officer held Mr. Castro's foot so that Brad Martin could allow his police dog to bite Mr. Castro's leg after Mr. Castro had verbally surrendered, had been tasered twice, had fallen off the roof, and was pinned to the ground by several officers with numerous other armed officers standing nearby.

74. Brad Martin engaged in extreme and outrageous conduct when he then allowed his police dog to continue to bite Mr. Castro for at least 45 seconds while Mr.

1  Castro was being held down by several officers and numerous other officers stood

2  nearby.

3  75. Brad Martin and the unidentified officer knew that their intentional actions

4  would cause severe emotional distress to Mr. Castro.

5  76. The actions of Brad Martin and the unidentified officer did, in fact, cause

6  severe emotional distress to Mr. Castro.

7  77. The State of Arizona is vicariously liable for the actions of its employees while

8  they are acting in the course of their employment.

**WHEREFORE, Plaintiff requests the Court enter judgement as follows:**

A. Awarding compensatory damages.

B. Awarding costs and attorney's fees under any available statute.

C. Awarding such other and further relief as the Court may deem just and proper.

### COUNT IV

### Excessive Force (42 USC § 1983)

### (As to Brad Martin)

78. Plaintiff incorporates the foregoing allegations as if set forth in full here.

79. Plaintiff suffered an injury to his leg.

80. The injury resulted directly and only from a use of force that was clearly excessive. Carlos Castro had already verbally surrendered, been tasered twice, had fallen off the side of the roof, and was pinned down on his stomach by several police officers, while several more armed officers stood nearby, prior to his leg being held in place by an unidentified officer, so that Brad Martin's police canine could bite it.

81. Several more officers held Carlos down while the dog continued to maul his leg for an extended period of time.

82. The excessiveness of this use of force was clearly unreasonable.

**WHEREFORE, Plaintiff requests the Court enter judgement as follows:**

A. Awarding actual, nominal, and punitive damages.

B. Awarding costs and attorney's fees under 42 U.S.C. § 1988 or any other available statute.

C. Awarding such other and further relief as the Court may deem just and proper.

RESPECTFULLY SUBMITTED this 16th day of April, 2018.

By: /s/ Scott A. Ewing
_____
SCOTT A. EWING
*Attorney for Plaintiff*
Law Office of Scott A. Ewing, PLC
5215 N Sabino Canyon Rd
Tucson, AZ 85750
(520) 777-3398

CERTIFICATE OF SERVICE

I hereby certify that on April 16, 2018, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and mailed a copy of the Electronic Filing through U.S. Mail to the following recipients:

Michael Tryon
Office of the Attorney General
2005 N Central Ave
Phoenix, AZ 85004
*Attorney for Brad Martin,*
*Arizona Department of Public Safety, and*
*The State of Arizona*

Aaron Schepler
City of Glendale Attorney
5850 W Glendale Ave
Glendale, AZ 85301
aschepler@glendaleaz.com
*Attorney for City of Glendale*

City of Peoria
c/o City Clerk
8401 W Monroe St
Peoria, AZ 85345