Scott A. Ewing
Law Office of Scott A. Ewing, PLC
5215 N Sabino Canyon Rd
Tucson, AZ 85750
State Bar No. 030375
(520) 777-3398
scott@azcivilrightsattorney.com

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Carlos Castro, | )<br>) |
|     Plaintiff, | )  No. 2:18-cv-00753-SRB-ESW<br>) |
| vs. | )  **THIRD AMENDED**<br>)  **COMPLAINT** |
| The State of Arizona and Brad Martin, in his individual capacity and as an employee of the Arizona Department of Public Safety, | )<br>)  JURY TRIAL DEMANDED<br>)<br>)<br>) |
|     Defendants. | )<br>) |

Plaintiff Carlos Castro alleges as follows:

### PARTIES, JURISDICTION, VENUE

1. Plaintiff Carlos Castro is a resident of Maricopa County in the State of Arizona.

2. The State of Arizona is the jural entity that is vicariously liable for the actions of its employees, including employees of the Arizona Department of Public Safety, and immunity was waived by the Arizona Attorney General in an email dated April 2, 2018, so that this matter could be directly filed in federal court.

1

3. Defendant Brad Martin is a resident of the State of Arizona and is, or was at the time of the incident, an employee of the Arizona Department of Public Safety.

4. The incident that gave rise to this litigation occurred in Maricopa County in the State of Arizona.

5. This Court has subject matter jurisdiction over the federal question claim pursuant to 28 U.S.C. § 1331.

6. This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

7. Based upon the foregoing allegations, jurisdiction and venue are proper.

## FACTUAL ALLEGATIONS

8. Plaintiff incorporates the foregoing allegations as if set forth in full here.

9. On March 10, 2017, the Arizona Department of Public Safety ("DPS"), received information that the Glendale Police Department was looking for Carlos Castro regarding an alleged robbery committed earlier in the day.

10. Since Mr. Castro was alleged to have been involved in a shooting on March 3, 2017, DPS requested and was granted an Exigent Circumstance Request to locate him by tracking the location of his cell phone.

11. Once an address was obtained, DPS SWAT ("SWAT") was notified to prepare and wait for confirmation that Mr. Castro was identified at the address.

12. Detectives from the Gang & Immigration Intelligence Enforcement Mission ("GIITEM"), managed and led by DPS, were sent to surveil the residence and confirm Mr. Castro was there.

13. Detective William Johnston (badge #8134) (also referred to as "Detective Johnson" in the police reports related to this incident) of the Glendale Police Department was also tasked with surveillance of the residence to confirm Mr. Castro was there.

14. Detective Johnston confirmed Mr. Castro was present at the address.

15. Detective Andrew Brandt (badge # 80173) requested a residential search warrant for the address, which was then issued by the Honorable Cindi Nannetti, Maricopa County Superior Court.

16. Due to the nature of the allegations against Mr. Castro, and his criminal history, SWAT was tasked with executing the residential search warrant.

17. Upon execution of the residential search warrant, SWAT advised that Mr. Castro had fled and was last seen running through neighboring backyards.

18. SWAT and GIITEM officers located Mr. Castro sitting on the roof of a residence a few houses from where the search warrant was executed.

19. At that point detectives were yelling at Castro to come off the roof.

20. Castro put his hands up, and then put his hands down. He said, "I'm done," and then put his hands back down.

21. Carlos Castro had taken off his shirt and raised his hands to show he was unarmed.

22. Carlos Castro had decided to surrender and was trying to determine how to safely get down off the roof.

23. Sergeant Brooks called for less than lethal force to get Castro to come down off the roof.

24. Body cam footage from Detective Ramos' body cam shows a time stamp of 7:38:23 when Mr. Castro says "I'm done" a second time and puts his hands back down. Body cam footage shows that at around 7:38:27 PM, one of the officers yells "come down now!" and another yells "come down!

25. Officer Johnston fired his Taser and another officer yelled "Come down and get down on your face or you're going to get bit!"

26. Carlos Castro did not immediately get down off the roof because he was afraid that he would be injured.

27. "The Taser was ineffective. Castro, once again, said, 'I'm done, I'm done.' He had his hands up, and then he put his hands back down.

28. At 7:38:33 in the body cam video, Carlos Castro says, "I wanna talk."

29. Officer Johnston fired his taser again.

30. Castro felt the electric shock being applied. He put his hands down again and pushed himself down off the edge of the roof.

31. At 7:38:39 in the body cam footage, Mr. Castro's hands can be seen touching the ground.

32. At 7:38:40 one of the officers can be seen to jump on top of Mr. Castro and less than a second later the other officers temporarily block the view of the body cam as Castro is surrounded.

33. At 7:38:46 on the body cam footage, three SWAT officers can be seen on top of Mr. Castro.

34. Between the time stamps 7:38:46 and 7:38:50 on the body cam footage Mr. Castro can be heard yelling and the two police dogs can be heard barking repeatedly.

35. At 7:38:52 on the body cam footage the body cam clearly shows that Carlos Castro is lying face down, with his shirt off.

36. In the body cam footage, Castro's right arm can be seen extended, flat out on the ground. At least two officers are holding him down. His legs are splayed out behind him.

37. Carlos Castro was unable to move his arms because the police officers on top of him had complete control over his arms.

38. At 7:38:53 in the body cam footage, a police officer can be seen holding Carlos Castro's foot up as Defendant Brad Martin brings his dog over to bite Castro's leg.

39. One officer had his knee on Castro's shoulder.

40. Carlos Castro's arms were not locked beneath his waistband.

41. Carlos Castro was not armed.

42. Carlos Castro had complied with the officers' orders to come down off the roof.

43. Carlos Castro had complied with the officer's orders to lie face down on the ground.

44. Carlos Castro had surrendered and was not resisting.

45. Brad Martin's dog bit down on Castro's leg.

46. Castro began yelling and kicking his legs after the dog began biting him.

47. Five seconds after the dog began biting Carlos Castro, an officer yelled "stop resisting!"

48. Carlos Castro yelled, "I'm not resisting!"

49. At 7:39:28 in the body cam video, one officer says, "all right, he's fucked up."

50. At 7:39:32 in the body cam video, Castro continues to cry out, "Get your dog! Get your dog!"

51. At 7:39:38, the body cam video shows that the dog is still biting Castro, 44 seconds after it began biting him.

52. At 7:39:45 in the body cam video, the dog has been removed.

53. As officers lead him away, Castro cries out, "Ahh! My leg! My leg!" at 7:40:19 in the body cam video.

54. One of the officers tells him, "Imagine if you would've just stopped."

55. At 7:40:59, Castro responds, "I did stop!"

56. Before the dog began biting him, Carlos Castro was face down on the ground with at least two officers holding him down.

57. None of the police reports authored by any officer present at this incident, other than Brad Martin, named Brad Martin as the dog handler who deployed his dog to bite Mr. Castro.

58. None of the police reports authored by any officer present at this incident indicate that an officer held Mr. Castro's foot.

59. The fact that an officer held Castro's foot had no bearing on Brad Martin's decision to deploy his police dog to bite Castro.

60. Numerous armed Arizona Department of Public Safety (DPS) officers were present as Brad Martin's canine bit Carlos Castro.

61. No DPS officers attempted to intervene to stop Brad Martin from allowing his dog to continue biting Carlos Castro for 44 seconds.

62. Being bitten by a dog for 44 seconds would be considered harmful and/or offensive by any reasonable person.

63. All officers present, and particularly any higher-ranking officers in a supervisory capacity, were grossly negligent for failing to stop Brad Martin's clearly unlawful use of force.

64. A DPS employee took photographs of Carlos Castro's injuries.

65. The photographs taken of Carlos Castro by AZDPS showed that there were injuries to his leg.

66. The injuries to Castro's leg were caused by Brad Martin's dog Storm biting Carlos Castro's leg.

67. Carlos Castro suffered severe, permanently disfiguring injuries to his leg.

68. Carlos Castro has undergone multiple surgeries to treat the injuries to his leg.

69. Carlos Castro will need to undergo further surgeries and physical therapy to treat the injuries to his leg.

70. Carlos Castro has also been in the State's custody since the incident, and he has not had an opportunity to ascertain the full extent of his injuries and what treatment will be needed.

## CLAIMS

### COUNT I

### Common Law Battery

### (As to the State of Arizona)

71. Plaintiff incorporates the foregoing allegations as if set forth in full here.

72. Brad Martin caused an offensive and harmful touching of Mr. Castro when he allowed his police dog to bite it.

73. Brad Martin's act was intentional.

74. The State of Arizona is vicariously liable for the conduct of its employees while they are acting in the course of their employment.

**WHEREFORE, Plaintiff requests the Court enter judgement as follows:**

   A. Awarding compensatory damages.

   B. Awarding such other and further relief as the Court may deem just and proper.

## COUNT II

**Intentional Infliction of Emotional Distress**

**(As to the State of Arizona)**

75. Plaintiff incorporates the foregoing allegations as if set forth in full here.

76. Brad Martin engaged in extreme and outrageous conduct when he intentionally used his police dog to bite Mr. Castro's leg after Mr. Castro had verbally surrendered, had been tasered twice, had complied with officers' commands to come down off the roof, and was pinned face down on the ground by at least two officers, with numerous other armed officers standing nearby.

77. Brad Martin engaged in extreme and outrageous conduct when he then allowed his police dog to continue to bite Mr. Castro for at least 44 seconds while Mr. Castro was being held down by several officers, while numerous other armed officers stood nearby.

78. Any reasonable person would know that allowing a dog to bite someone's leg for 44 seconds would cause severe emotional distress to that person.

79. The actions of Brad Martin did, in fact, cause severe emotional distress to Carlos Castro.

80. Brad Martin intended to cause Carlos Castro to experience severe emotional distress.

81. The State of Arizona is vicariously liable for the actions of its employees while they are acting in the course of their employment.

**WHEREFORE, Plaintiff requests the Court enter judgement as follows:**

    A.  Awarding compensatory damages.

    B.  Awarding costs and attorney's fees under any available statute.

    C.  Awarding such other and further relief as the Court may deem just and proper.

**COUNT III**

**Excessive Force (42 USC § 1983)**

**(As to Brad Martin)**

82. Plaintiff incorporates the foregoing allegations as if set forth in full here.

83. Plaintiff suffered an injury to his leg.

84. The injury resulted directly from a use of force that was clearly excessive.

85. Carlos Castro had already verbally surrendered, been tasered twice, had fallen off the side of the roof, and was pinned down on his stomach by several police officers, while several more armed officers stood nearby, when Brad Martin used his police dog to bite Carlos Castro's leg for an extended period of time.

86. At least two DPS officers held Carlos down while the dog continued to bite his leg for an extended period of time.

87. The excessiveness of this use of force was clearly unreasonable.

88. Brad Martin violated Carlos Castro's 4th Amendment rights under color of state law.

89. The constitutional right that was violated was clearly established.

**WHEREFORE, Plaintiff requests the Court enter judgement as follows:**

A. Awarding actual, nominal, and punitive damages.

B. Awarding costs and attorney's fees under 42 U.S.C. § 1988 or any other available statute.

C. Awarding such other and further relief as the Court may deem just and proper.

## COUNT IV

### Gross Negligence

### (As to the State of Arizona)

90. Gross negligence differs from ordinary negligence in quality and not degree.

91. Gross Negligence is flagrant and evinces a lawless and destructive spirit.

92. A police officer who intentionally violates the law, or who stands by idly while other officers are violating the law, evinces a lawless and destructive spirit.

93. Brad Martin committed an aggravated assault under Arizona State law by using his dog to cause serious bodily injury to Carlos Castro.

94. No reasonable person would believe that using his dog to bite Carlos Castro was immediately necessary to effect an arrest or detention or to prevent escape, and therefore Brad Martin was not justified in committing an aggravated assault against Carlos Castro.

95. A party is grossly or wantonly negligent if he acts or fails to act when he knows or has reason to know facts which would lead a reasonable person to realize that his conduct not only creates an unreasonable risk of bodily harm to others but also involves a high probability that substantial harm will result.

96. The Arizona DPS officers who held Castro down and the DPS officers who stood nearby knew or had reason to know facts which would lead a reasonable person to realize that their conduct not only created an unreasonable risk of bodily harm to Carlos Castro but also involved a high probability that substantial harm would result.

97. The Arizona DPS officers who held Carlos Castro down and/or stood and watched while Brad Martin committed an aggravated assault, common law battery, intentional infliction of emotional distress, and a violation of Castro's 4th Amendment rights, evinced a lawless and destructive spirit that was flagrant, and thus grossly negligent.

98. The Arizona DPS officers at the scene of Carlos Castro's arrest had a duty of care to Castro when they worked together to locate him, told him to come down from the roof, and then either held him down or stood nearby watching.

**WHEREFORE, Plaintiff requests the Court enter judgement as follows:**

    A. Awarding damages for all physical and emotional injuries.

    B. Awarding such other and further relief as the Court may deem just and proper.

RESPECTFULLY SUBMITTED this __8__ th day of ___March___, 2019.

By: /s/ Scott A. Ewing

_____
SCOTT A. EWING
*Attorney for Plaintiff*
Law Office of Scott A. Ewing, PLC
5215 N Sabino Canyon Rd
Tucson, AZ 85750
(520) 777-3398

CERTIFICATE OF SERVICE

I hereby certify that on ___March 18___, 2019, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and mailed a copy of the Electronic Filing through U.S. Mail to the following recipients:

Michael Tryon
Stephanie Elliot
Office of the Attorney General
2005 N Central Ave
Phoenix, AZ 85004
stephanie.elliott@azag.gov
michael.tryon@azag.gov
*Attorney for Brad Martin and*
*The State of Arizona*

By:   /s/ Scott A. Ewing
    _____
    Scott A. Ewing