**HONOR LAW GROUP, PLLC**
Benjamin L. Rundall, State Bar No. 031661
James M. Cool, State Bar No. 028023
4450 S. Rural Rd., Suite C-220
Tempe, AZ 85282
(602) 282-0223
Attorney E-mail:  files@aztrialattorneys.com

**LAW OFFICE OF SCOTT A. EWING**
Scott A. Ewing, State Bar No. 030375
5215 N. Sabino Canyon Rd.
Tucson, AZ 85749
Attorney E-mail: scott@azcivilrightsattorney.com

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT
## DISTRICT OF ARIZONA

| Carlos Castro,<br><br>Plaintiff,<br><br>vs.<br><br>The State of Arizona, et al.,<br><br>Defendants. | Case No. 2:18-cv-00753-SRB-ESW<br><br>**PLAINTIFF'S CONTROVERTING AND SEPARATE STATEMENTS OF FACTS IN SUPPORT OF HIS RESPONSE TO STATE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |
|---|---|

Plaintiff, Carlos Castro ("Mr. Castro"), submits the following Controverting Statement of Facts ("CSF") and Separate Statement of Facts ("PSOF") in opposition to Defendants' Motion for Summary Judgment.

## **Plaintiff's Controverting Statement of Facts**

1. Undisputed.

2. Undisputed.

3. Undisputed.

4. **Undisputed, but with Objection.** The information regarding Castro's prior criminal conduct and convictions is not relevant to whether Defendant Martin's use of force

was justified; and even if it was, such evidence would be overly prejudicial. Plaintiff has already conceded his prior criminal past, but his past is not the focus of inquiry before this Court. Moreover, even Defendants' expert concedes "I don't recall anything in the record that suggested that [Plaintiff] was involved in gang activity at the time of committing any of these other crimes." *See* **Exhibit 3 at 80:11-13.**

      5.    **Undisputed, but with Objection.** Plaintiff repeats his objection made in response to SOF 4.

      6.    **Undisputed, but with Objection.** Plaintiff repeats his objection made in response to SOF 4.

      7.    Undisputed.

      8.    **Undisputed, but with Objection.** Plaintiff repeats his objection made in response to SOF 4.

      9.    **Disputed.** Ms. Benton's brother, BJ, started arguing with and threatening Plaintiff because he disagreed with Ms. Benton's decision to be in a relationship with Plaintiff. Plaintiff was not in a dispute with the entire Benton family, but rather, Ms. Benton's brother BJ who disagreed strongly with Ms. Benton's relationship with Plaintiff. Moreover, the characterization that Plaintiff was "ready and willing to use his gun" is deceptively cryptic. If Defendants' intent in being cryptic is to infer Castro was willing to use his gun and shoot BJ, they should also include the important mitigating details that all four shots Plaintiff fired were ***into the air*** and no evidence shows Plaintiff pointed a gun at any person or shot at any person. This additional fact provides an important qualitative distinction that even Defendants' expert agrees could be used to show less indication of threat. *See* **Exhibit B at 91:10-95:4; Exhibit 3 at 62:4-25.**

      10.    **Undisputed, but with Objection.** Plaintiff repeats his objection made in response to SOF 4.

11. **Disputed.** Plaintiff again objects to the characterization of Defendants' narrative, which should include the critical fact he shot into the air, and not at any specific individual.

12. **Undisputed, but with Objection.** Plaintiff repeats his objection made in response to SOF 4.

13. **Disputed.** Plaintiff has never been convicted of an assault or robbery at JCPenney. *See* **Exhibit 7.**

14. **Objection.** Whether Plaintiff invoked his Fifth Amendment rights is not a material fact relevant to the Court's analysis in this matter and has only been mentioned to create the improper inference that Plaintiff must be guilty of these allegations.

15. **Objection.** Plaintiff has never been charged with or convicted of homicide and this is not a material fact that will aid in resolution of Defendant Martin's use of excessive force. This statement has been included by Defendants for the sole purpose of avoiding Defendant Martin's own misconduct.

16. **Undisputed, but with Objection.** Plaintiff repeats his objection made in response to SOF 4.

17. **Undisputed, but with Objection.** Plaintiff repeats his objection made in response to SOF 4.

18. **Disputed.** Plaintiff was never charged with or convicted of an assault and robbery at JCPenney. *See* **Exhibit 7.**

19. Undisputed.

20. Undisputed.

21. Undisputed.

22. Undisputed.

23. Undisputed.

3

24. Undisputed.

25. **Undisputed, but with Objection.** At his deposition, Plaintiff said he was not a member of a gang at the time of his arrest. *See* **Exhibit B at 25:21-23.**

26. Undisputed.

27. **Undisputed, but with Clarification.** Plaintiff agreed getting the face tattoo was a mistake. *See* **Exhibit B at 30:8-15.**

28. Undisputed.

29. Undisputed.

30. Undisputed.

31. Undisputed.

32. Undisputed.

33. **Disputed.** Plaintiff stated that while hiding in the shed he never heard Officers give K-9 Commands or saw any K-9s. *See* **Exhibit B at 121:6-121:11.**

34. **Undisputed, but with Clarification.** The screenshots presented do not necessarily represent "key" moments of this incident but, rather, relevant moments.

35. Undisputed.

36. **Disputed.** Plaintiff did not continue fleeing but rather climbed on top of the roof from the ladder in the backyard while determining how to surrender because he "knew [he]. was caught" and recognized that Officers were in the front. *See* **Exhibit B at 124:25-125:7**.

37. **Disputed.** Plaintiff was already on the front area of the roof near the front yard when first ordered to come down off the roof by an Officer in the front yard. So, had Plaintiff walked back to the ladder on the back side of the roof, he would have been walking away from and out of the presence of officers. By walking towards the officer, Plaintiff was in the process of obeying the Officer's commands, which is also recognized by Defendants' expert. *See* **Exhibit B at 122:10-25; Exhibit 3 at 97:2-25.**

4

38. **Disputed.** Officers gave conflicting commands to both "stop" and get off the roof. As Defendants' expert concedes, "it's not best practice to give conflicting commands," because doing so may prove "confusing" to the suspect. Despite these conflicting commands, however, Plaintiff walked to the edge of the roof towards Officers and within their line of sight, sat down, put his feet over the edge of the roof, and said "I'm done." *See* **Exhibit 1 at 2:11-3:3; Exhibit 2 at 00:02-00:16; Exhibit B at 124:2-7; Exhibit A at 24:6-24; Exhibit 3 at 86:1-24 and 87:12-24.**

39. **Disputed.** Plaintiff attempted to comply with Officers conflicting commands and even Defendants' own expert conceded it would be fair to conclude Plaintiff "thought he was being compliant." *See* **Exhibit 2 at 00:15; Exhibit 5 at p. 15, ¶ 6; Exhibit 3 at 106:23-107:7 and 178:15-179:6; Exhibit B at 124:2-7 and 124:25-125:7.**

40. **Disputed.** Plaintiff said "I'm done" at least six times before Officers Tasered him from the roof. Plaintiff also pleaded with Officers that he did not want to fall from the roof, a request that was completely ignored by Officers despite being reasonable. *See* **Exhibit 1 at 2:21, 3:3, and 3:11-15; Exhibit 2 at 00:27-00:35; Exhibit B at 124:25-125:7.**

41. Undisputed.

42. **Undisputed but with Clarification.** Plaintiff also said he was sitting right in front of officers, without a shirt, and he believed they could see "I have no guns." *See* **Exhibit B at 131:10-132:8.**

43. Undisputed.

44. **Disputed.** Plaintiff was not "plotting his escape" and attempted to comply with conflicting police commands. *See* **Exhibit B at 124:25-125:7; Exhibit 2 at 00:02-00:16; Exhibit A at 24:6-24.**

45. **Disputed.** Plaintiff was well illuminated by a police spotlight and shirtless. Officers' approach of Plaintiff in defiance of protocol creates an inference they did not perceive Plaintiff as a threat.

46. **Disputed.** Plaintiff repeatedly tried to comply with police commands and verbally surrendered to police, stating, "I'm done" six times before being inappropriately Tasered off the roof. *See* **Exhibit 2 at 00:15-00:31 and Exhibit B at 124:2-7.**

47. **Disputed.** Defendants' expert believes it wouldn't be an "unfair conclusion" to conclude Plaintiff was surrendering; Plaintiff's expert says Plaintiff was "100% done;" Plaintiff said he was surrendering, and the video shows Plaintiff putting his hands up and telling officers "I'm done" six times. *See* **Exhibit 2 at 00:15-00:31; Exhibit 3 at 178:15-179:6; Exhibit 4 at 52:7-56:20; Exhibit B at 124:25-125:4 and 134:3-18.**

48. **Disputed.** The very next line from Plaintiff's deposition, which Defendants conveniently failed to mention, confirms Plaintiff "was going to give up" because "I knew I was caught." *See* **Exhibit B at 124:25-125:4.**

49. **Disputed.** Plaintiff was not ignoring police commands but rather attempting to comply with conflicting commands. Also, the Taser obviously had an effect on Plaintiff who cried out in pain upon being struck. Plaintiff agrees he told officers he was done. *See* **Exhibit 1 at 2:11-3:3 and Exhibit 2 at 00:02-00:16.**

50. **Disputed.** The Taser did effect Plaintiff who cried out in pain upon being struck. *See* **Exhibit 1 at 3:15; Exhibit 2 at 00:29; Exhibit B at 130:1-25.**

51. **Disputed.** Plaintiff does not reject Defendant Martin's observations in other cases but calls into question the use of this testimony to support his basis for allowing Storm to bite Plaintiff. Plaintiff reacted to the Tasers as can be heard on the video. *See* **Exhibit 2.**

52. **Undisputed, but with Clarification.** Plaintiff was also given the conflicting command to "stop." *See* **Exhibit A at 24:6-24.**

6

53. **Disputed.** After the warning issued by Officers and referenced in Defendants' SOF 52, Plaintiff never received any other warnings he would be bitten by Storm. *See* **Exhibit 2; Exhibit B at 150:18-22.**

54. **Disputed.** Plaintiff's deposition and further analysis of video show Plaintiff was tasered from the roof. Defendants' insinuation that not coming off the roof constitutes a failure to comply with police commands ignores their own failure to follow policy by employing a Taser to dangerously remove a surrendering suspect from a roof. *See* **Exhibit 2 at 00:29; Exhibit 4 at 46:5-25; Exhibit B at 130:23-25.**

55. **Disputed.** Plaintiff agrees Troopers Headley and Engwis tackled him but disputes he was trying to escape. *See* **Exhibit 2 at 00:32.**

56. **Disputed.** Plaintiff could not comply with Officers' commands because these Officers were holding his arms. This is not only according to Plaintiff and what can be seen on the video but was confirmed by Defendant Martin and Defendants' Expert. *See* **Exhibit B at 145:2-150:14; Exhibit 3 at 143:2-6; Exhibit A at 25:18-23; Exhibit 2 at 00:46.**

57. **Disputed.** Officers had control of Plaintiff's arms. *See* **Exhibit B at 145:2-150:14 and Exhibit 2 at 00:32-00:41.**

58. Undisputed.

59. **Disputed.** Plaintiff had no opportunity to clench his arms beneath his torso or otherwise resist officers' attempts to handcuff him because officers immediately grabbed Plaintiff's hands, maintaining full control over them. *See* **Exhibit 2 at 00:46; Exhibit B at 145:2-150:14; Exhibit A at 25:18-23.**

60. **Disputed.** Defendant Martin had no reason to fear Plaintiff was armed after seeing him shirtless and fully illuminated by the police helicopter while Plaintiff was on the roof. Moreover, Plaintiff was being pinned to the ground on his stomach by at least four

7

officers, eliminating the possibility he could retrieve a firearm from the front of his waistband and open fire on Officers. *See* **Exhibit 2 at 00:46.**

61. Undisputed.

62. **Disputed.** Plaintiff did not and could not put his arms beneath him as they were being held by officers. *See* **Exhibit B at 145:2-150:14; Exhibit 3 at 143:2-6; Exhibit A at 25:18-23; Exhibit 2 at 00:46.**

63. **Undisputed, but with Clarification.** Plaintiff could not have been flailing if his foot was held by officers.

64. **Disputed.** Plaintiff was not resisting arrest. Rather, Plaintiff was reacting to being bitten by a dog who tore out chunks of his flesh and muscle. Accordingly, use of Storm exacerbated Plaintiff's arrest. *See* **Exhibit 2 at 00:46.**

65. **Disputed.** When Plaintiff was cuffed is disputed. Plaintiff says he was in cuffs when bitten by Storm. Video shows an officer removing ziptie cuffs from his waist well before Storm stops biting Plaintiff. *See* **Exhibit B at 145:2-146:14 and Exhibit 2 at 1:17.**

66. **Disputed.** Plaintiff was already in cuffs when bitten by Storm. *See* **Exhibit B at 145:2-146:14 and Exhibit 2 at 1:17.**

67. **Disputed.** See Plaintiff's response to SOF 65, immediately above.

68. **Disputed.** Plaintiff's expert opined in his report that the bite lasted 86 seconds based on his observation. *See* **Exhibit 5 at p. 13, ¶ 2.**

69. **Undisputed, but with Clarification.** Critically, Defendant Martin's report was not timely and submitted nearly a month after the incident. *See* **Exhibit 5 at p. 21, ¶ 11.**

70. **Disputed.** The State Defendants misstate the facts when they say "…what is clear is that Storm was released from the bite as soon as Plaintiff was handcuffed." As the police body camera footage shows, and Plaintiff's expert explains, Detective Martin may not

8

have been in control of K9 Storm as he gave the command for Storm to release the bite *at least* twice. *See* **Exhibit 5 at 14, ¶ 5.**

**Plaintiff's Separate Statement of Disputed Facts Overlooked by Defendants**

1. Because of the dog bite, Plaintiff suffered severe, permanently disfiguring injuries to his leg that have required multiple surgeries and extensive physical therapy to treat. *See* **Exhibit 6; Exhibit 9; Exhibit B at 150:5-6.**

2. Plaintiff was brightly illuminated by a spotlight on a circling police helicopter while on the roof and at the time he was bitten by Storm. *See* **Exhibit 2; Exhibit 8.**

3. While on the roof, Plaintiff does not reach for his waistband or pants pocket. *See* **Exhibit 2 at 00:09-00:31; Exhibit 3 at 175:17-176:9.**

4. While Plaintiff is on the roof, at least ten officers swarm Plaintiff from below with weapons drawn. *See* **Exhibit 2 at 00:10-00:31; Exhibit B at 126:7-11.**

5. Rushing up to Plaintiff while Plaintiff had a tactical advantage may not have been best practice, or at the very least demonstrates officers had sufficient control of the situation to engage in a dialogue with Plaintiff before the Taser and bite. *See* **Exhibit 3 at 116:2-120:21.**

6. Two police dogs are below Plaintiff while he is on the roof. *See* **Exhibit 2.**

7. An unidentified Officer audibly tells one of the police dogs to "bite him, bite him, bite him" while Plaintiff is attempting to comply with police commands to come down from the roof. *See* **Exhibit 1 at 2:15-16; Exhibit 2 at 00:11-00:14.**

8. Plaintiff audibly cries out when hit by the Taser and repeats four times "I'm done" and that he doesn't want to fall off the roof. *See* **Exhibit 1 at 3:11-15; Exhibit 2.**

9. Plaintiff is struck by a second Taser round. *See* **Exhibit 2 at 00:29.**

10. Plaintiff falls from the roof less than a second after being struck by the second Taser. *See* **Exhibit 2 at 00:29-00:31; Exhibit B at 130:9-15.**

9

11. Plaintiff fell no more than five feet from his position on the roof. *See* **Exhibit 2; Exhibit 3 at 130:18-131:5.**

12. Plaintiff never stood up after falling from the roof. *See* **Exhibit 2; Exhibit 3 at 131:6-9.**

13. Plaintiff is tackled by two SWAT officers in full tactical gear less than a second after falling from the roof. *See* **Exhibit 2; Exhibit A at 25:18-23.**

14. Plaintiff is commanded to place his hands behind his back while Officers are holding his arms. *See* **Exhibit D at #18-19; Exhibit E at ¶ 2; Exhibit F at 17:45-17:55; Exhibit B at 145:2-150:14; Exhibit 3 at 143:2-6; Exhibit A at 25:18-23; Exhibit 2 at 00:46; Exhibit G at Photos 17 and 19.**

15. Plaintiff is unable to comply with police commands because Officers are holding his arms. *See* **Exhibit B at 145:2-150:14; Exhibit 2 at 00:32-00:41; Exhibit G at Photos 18-19.**

16. Seconds after being Tasered off the roof, other SWAT officers are on top of Plaintiff and pinning him to the ground. *See* **Exhibit 2 at 00:31-00:40; Exhibit A at 28:22-29:7.**

17. An Officer removes ziptie cuffs from his waistband before Storm is removed from the bite. *See* **Exhibit 2 at 00:54.**

18. Audio from the body camera video reveals an Officer saying "good job guys" after Plaintiff has been bitten, but before Storm is removed from the bite. *See* **Exhibit 1 at 4:3; Exhibit 2 at 00:48.**

19. Plaintiff is bitten by Storm within seconds of being Tasered from the roof. *See* **Exhibit 2 at 00:29-00:43.**

20. Plaintiff said he was in cuffs before being released from the bite. *See* **Exhibit B at 150:12-14.**

21. Defendant Martin allowed Storm to continue biting Plaintiff for 86 seconds. Plaintiff's expert will opine the industry standard for a bite is between five to fifteen seconds. *See* **Exhibit 2; Exhibit 4 at 167:21-168:7; Exhibit 5 at p. 13, ¶ 2.**

22. At the time of his arrest, Plaintiff did not have a gun. *See* **Exhibit 3 at 79:3-5.**

23. Plaintiff could not have remained still while bitten by Storm. *See* **Exhibit 3 at 154:21-155:25; Exhibit 5 at p. 16, ¶ 7.**

RESPECTFULLY SUBMITTED this 14th day of November, 2019.

**HONOR LAW GROUP, PLLC**

By */s/ Benjamin L. Rundall*
    Benjamin L. Rundall, Esq.
    *Attorneys for Plaintiff*

CERTIFICATE OF SERVICE

I hereby certify that on November 14, 2019, I caused the foregoing document to be electronically transmitted to the Clerk's Office using the CM/ECF System for filing and transmittal of a notice of Electronic Filing to the following CM/ECF registrants:

Honorable Susan R. Bolton
United States District Court
Sandra Day O'Connor U.S. Courthouse, Ste. 522
401 W. Washington St., SPC 50
Phoenix, AZ 85003-2153

Honorable Eileen S. Willett
Magistrate Judge
United States District Court
401 W. Washington St., SPC 13
Phoenix, AZ 85003-2153

1
2   Michael Tryon
3   Jeremy Horn
    Office of the Attorney General
4   2005 N. Central Ave.
    Phoenix, AZ 85004
5   michael.tryon@azag.gov
6   jeremy.horn@azag.gov
    *Attorney for Brad Martin and*
7   *The State of Arizona*

8
9      /s/ ALG
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28