**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

MAY 10 2021

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| CARLOS CASTRO, | No. 20-16009 |
| Plaintiff-Appellee, | D.C. No. 2:18-cv-00753-SRB-ESW |
| v. | |
| BRAD MARTIN, in his individual capacity and as an employee of the Arizona Department of Public Safety; STATE OF ARIZONA, | MEMORANDUM* |
| Defendants-Appellants, | |
| and | |
| ARIZONA DEPARTMENT OF PUBLIC SAFETY; et al., | |
| Defendants. | |

Appeal from the United States District Court
for the District of Arizona
Susan R. Bolton, District Judge, Presiding

Submitted May 6, 2021**
Portland, Oregon

---

    \*    This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

    \*\*    The panel unanimously concludes this case is suitable for decision without oral argument. *See* Fed. R. App. P. 34(a)(2).

Before:  W. FLETCHER and FRIEDLAND, Circuit Judges, and BLOCK,*** District Judge.

Defendants Detective Brad Martin and the State of Arizona appeal the denial of summary judgment on a suit brought by Plaintiff Carlos Castro, who was severely injured after being bitten by a K9 on Martin's command.  We have jurisdiction under 28 U.S.C. § 1291.  We affirm.

In March 2017, a group of police officers aided by a SWAT team executed a residential search warrant to arrest Castro, who was suspected of aggravated assault and strong-arm robbery.[1]  Martin, a K9 handler with the Department of Public Safety, was part of the officer team.  Castro fled when the officers arrived at the residence but was soon apprehended on the roof of a neighboring home.  Officers commanded Castro to both "stop" and to get off the roof; when Castro did not immediately leave the roof, an officer shot Castro twice with a Taser.  The impact of the Taser caused Castro to fall off the roof, at which point four officers tackled him.  Castro contends that he did not resist while face-down on the ground

---

***   The Honorable Frederic Block, United States District Judge for the Eastern District of New York, sitting by designation.

[1] We relate the version of facts most favorable to Castro, the non-moving party, unless otherwise indicated.  *See Foster v. City of Indio*, 908 F.3d 1204, 1207 (9th Cir. 2018).  Where, as here, there is video evidence documenting the events in question, courts should not accept an account that is "blatantly contradicted" by the video, *Scott v. Harris*, 550 U.S. 372, 380 (2007), but must still resolve any ambiguities left by the video in the non-moving party's favor, *Blankenhorn v. City of Orange*, 485 F.3d 463, 468 n.1 (9th Cir. 2007).

2

and that officers grabbed his hands behind his back, maintaining full control over him.[2] Defendants counter that Castro resisted arrest by locking his arms and hands underneath his torso and by kicking.

Martin, who was observing the encounter, later testified that he believed Castro presented a danger to officers because Castro was allegedly resisting arrest and because Martin thought Castro might be concealing a firearm in his pants. Martin therefore decided to deploy his K9 as a "pain compliance tool" to assist in the arrest, and he commanded the dog to bite Castro's leg. Body camera video footage appears to show that Castro was successfully handcuffed about 25 seconds after the K9 began its bite (or sooner), and that another 12 to 26 seconds elapsed between Castro's handcuffing and the release of the bite. Castro's injuries from the bite required multiple surgeries and prolonged physical therapy.

Castro sued Martin under 42 U.S.C. § 1983, alleging that the K9 bite constituted excessive force. He also sued the State for Martin's alleged battery and intentional infliction of emotional distress, as well as for the other officers' alleged gross negligence, on a vicarious liability theory. Defendants moved for summary judgment. The district court, pointing to the video showing the delay between Castro being "handcuffed and subdued" and the end of the K9 bite, held that

---

[2] Castro admitted during discovery that he "did not immediately obey police commands to put [his] hands behind [his] back."

3

genuine disputes of fact precluded summary judgment and qualified immunity on all claims.

Because this is an interlocutory appeal from an order denying qualified immunity, the scope of our review is limited to questions of law. *George v. Morris*, 736 F.3d 829, 835 (9th Cir. 2013). "If the evidence, reviewed in the light most favorable to [Castro], could support a finding of excessive force, then the defendants are not entitled to summary judgment." *Smith v. City of Hemet*, 394 F.3d 689, 701 (9th Cir. 2005) (en banc).

Although the parties make various arguments about the legality of the entire exercise of force, this appeal turns solely on the 12 to 26 seconds that passed between when Castro was "handcuffed and subdued" and when the K9 released its bite.[3] "Our caselaw is clear that an officer cannot direct a police dog to continue biting a suspect who has fully surrendered and is under the officer's control." *Hernandez v. Town of Gilbert*, 989 F.3d 739, 745 (9th Cir. 2021) (describing clearly established law as of May 2016, nearly a year before Castro's arrest); *see also Watkins v. City of Oakland*, 145 F.3d 1087, 1090, 1093 (9th Cir. 1998) (holding "that it was clearly established that excessive duration of [a K9] bite . . . could constitute excessive force," and accordingly denying qualified

---

[3] Specifically, we do not consider parties' arguments regarding whether the initiation of the K9 bite constituted excessive force.

immunity when an officer allegedly "continued to allow [the K9] to bite [the plaintiff] even though he was obviously helpless and surrounded by police officers with their guns drawn").  The evidence, viewed in Castro's favor, thus supports a violation of clearly established law.

This same factual dispute precludes summary judgment on Castro's tort claims.  Defendants invoke common law qualified immunity and statutory immunity, but these defenses require an official to reasonably believe that his action is lawful, *Chamberlain v. Mathis*, 729 P.2d 905, 912 (Ariz. 1986), or that his continued use of force is "immediately necessary," Ariz. Rev. Stat. § 13-409; *Ryan v. Napier*, 425 P.3d 230, 239 (Ariz. 2018) ("[A]lthough the use of force can be justified [under § 13-409] at its commencement, it loses legal justification at the point the force becomes unnecessary.").

**AFFIRMED.**